UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| MACK JOHNSON | CIVIL ACTION NO. |
| V. | JUDGE: |
| COTTON STORAGE, INC. | MAGISTRATE JUDGE |
| | JURY DEMAND |

## COMPLAINT

Plaintiff, MACK JOHNSON, appearing through undersigned counsel, brings this civil action against COTTON STORAGE, INC. and represents the following:

### I.  JURISDICTION

This is an action for declaratory, injunctive and monetary relief for discrimination and retaliation in employment in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, codified at 42 U.S.C. §2000e et seq. and in violation of 42 U.S.C. §1981, Equal Rights under the Law.

Jurisdiction is based on 42 U.S.C. §2000e-5(f)(3) and 28 U.S.C. § 1331. This Court has supplemental jurisdiction under 28 U.S.C. §1332.

### II.  PARTIES

1.  Plaintiff is MACK JOHNSON, a person of the age of majority who at the time of the initial filing of this lawsuit is a resident of the State of Louisiana, Rapides Parish.

2.  Made Defendant herein is COTTON STORAGE, INC., a Louisiana corporation with its principal place of business in Alexandria, Louisiana

### III.   FACTUAL ALLEGATIONS

3. Plaintiff, an African American, had been employed by Cotton Storage, Inc. for almost thirty (30) years when his employment was terminated July 29, 2021. At the time of termination of employment Plaintiff held the position of Warehouse Supervisor.

4. In Plaintiff's thirtieth year of employment, the Executive Plant Manager, Herman Martinez, suggested that Plaintiff was next in line for his position and that Plaintiff should apply to be his successor as Plaintiff had the necessary skill and experience because of the fact that Plaintiff had already performed most of the duties of the position during his thirty-year employment.

5. All promotional decisions at Cotton Storage, Inc. are made by the Board of Directors. All members of the Board of Directors of Cotton Storage, Inc. are white males.

6. The Board of Directors, however, discouraged Plaintiff from applying for the position by informing Plaintiff, through others, that he would never be considered for the Executive Plant Manager position or selected to lead Cotton Storage, Inc. In fact, members of the Board of Directors stated in the presence of others that they did not "want a black man running their company," and that they "wanted a white man."

7. The Executive Plant Manager, Herman. Martinez, told Plaintiff about these comments after the same being made. He also told Plaintiff that the Board members did not want a black man to be a visible executive of Cotton Storage, Inc., and that members of the Cotton Storage, Inc.'s board of directors were racist. These statements, combined with repeating racial slurs that Herman Martinez had heard made by a member of the Board of Directors, were made to Plaintiff in the presence of Plaintiff's co-workers.

8. The Executive Plant Manager Herman Martinez repeated these statements to Plaintiff several times in the day, until Plaintiff finally replied that he no longer wanted to listen to any racist remarks, and that he objected to the same and the fact that he had been a victim of racial discrimination. Plaintiff also spoke to the Executive Plant Manager's wife to express his disappointment in the board members' discriminatory bias against him. Both of these actions constituted protected activity in that they opposed the discrimination Plaintiff reasonably believed that he had experienced. Plaintiff's complaints were communicated to the Board Members of Cotton Storage, Inc.

9. On or about June, 1, 2021, Brad Glorioso, a white male, was selected by the Board to serve as Executive Plant Manager.

10. Prior to taking office as the Executive Plant Manager of Cotton Storage, Inc., Mr. Glorioso toured the facility and met Plaintiff.

11. During that meeting, Plaintiff was instructed not to address Mr. Glorioso by his first name, but to call him "Mr. Glorioso" or "Mr. Brad." Plaintiff was further instructed by the Board of Directors of Cotton Storage, Inc. that it was his job to train Mr. Glorioso for the position of Executive Plant Manager.

12. Approximately three weeks after Mr. Glorioso assumed the role of Executive Plant Manager, Plaintiff underwent a medical procedure which required him to miss two days of work.

13. When Plaintiff returned to work, he was informed by his secretary that in his absence Mr. Glorioso had made racist statements about Plaintiff. Notwithstanding this fact, Plaintiff continued to train Mr. Glorioso for the position of Executive Plant Manager as instructed.

14. Plaintiff was off work July 8, 2021, through July 23, 2021, for vacation, interrupted by the death and funeral of a close family member.

15. On July 23, 2021, while Plaintiff was still out of work, Plaintiff was informed that he was being suspended without pay pending an investigation.

16. Plaintiff's employment was terminated July 29, 2021, for reasons which were false and which were pretextual for discrimination and retaliation.

17. Plaintiff suffered loss of pay and benefits and emotional distress as a result of the discriminatory and retaliatory termination of his employment.

18. The Defendant acted with malice or with reckless indifference to Plaintiff's federally protected rights by terminating Plaintiff's employment for discriminatory and retaliatory reasons.

19. On January 6, 2022, Plaintiff filed a charge of discrimination based on race and retaliation with the Equal Employment Opportunity Commission ("EEOC") against Cotton Storage, Inc.

20. The EEOC, pursuant to its investigation policy, sent notice of the Charge of Discrimination to Cotton Storage, Inc.

21. Thereafter, over six months after the termination of Plaintiff's employment, the Defendant publicly made derogatory statements about Plaintiff, including statements falsely accusing Plaintiff of criminal activity.

22. On March 25, 2022, while at work with a new employer and in the presence of Plaintiff's new co-workers, Plaintiff was arrested, handcuffed, read Miranda Rights, and transported to the police station for interrogation on false allegations that he had stolen from Cotton Storage, Inc.

23. The arrest and interrogation occurred at the insistence of the Defendant following the Defendant's receipt of Plaintiff's EEOC charge.

24. Plaintiff was released after questioning, and no criminal charges were pursued.

25. The arrest caused Plaintiff public humiliation and injured his professional reputation.

26. The Defendant acted with malice or with reckless indifference to Plaintiff's federally protected rights by filing criminal charges against Plaintiff.

27. On April 21, 2022, Plaintiff filed a second charge of discrimination with the EEOC asserting that the Defendant retaliated against him based on his initial EEOC charge by filing false criminal charges against him and having him arrested at his new place of employment.

28. The EEOC has terminated its investigation and issued a Notice of the Right to Sue on both Plaintiff's Charges. Plaintiff has exhausted all administrative remedies that are pre-requisite to filing suit.

## IV.   CLAIMS ASSERTED

29. Plaintiff asserts claims for race discrimination and retaliation under Title VII and 42 U.S.C. §1981 and a claim under Louisiana law for malicious prosecution. These claims are more fully described in Counts I-VII, below.

## COUNT I

### TITLE VII:  RACE DISCRIMINATION

30. The facts alleged in paragraphs 1-29, above, establish that Defendant discriminated against the Plaintiff based on his race by denying him promotion to an executive management position in the company and terminating his employment because of his race.

31. Defendant acted with malice and / or reckless disregard of Plaintiff's federally protected rights. The evidence of malice includes but is not limited to statements of the members

of the Board of Directors that they did not want a black man to present a public visual image of Cotton Storage, Inc.

32.     Thereafter, when a white male manager was hired, Plaintiff was required to train this manager and to address him as "Mr. Glorioso" or "Mr. Brad," terms harking back to the days of slavery when a field slave was required to address the overseer or plantation owner using the first name only when preceded by the word "Mister."

33.     As a result of the discriminatory conduct of Defendant, Plaintiff experienced emotional distress and suffered lost wages and benefits.

34.     Plaintiff seeks and is entitled to recover back pay and monetary compensation for injuries caused by the discriminatory work environment that resulted in the termination of his employment.

35.     Plaintiff is also entitled to recover punitive damages and reimbursement of his costs and attorney's fees.

## COUNT II

### TITLE VII:  RETALIATION

36.     As described in paragraphs 6-8 of this Complaint, Plaintiff objected to the racist statements being made about him and asked the acting manager and others not to continue to repeat to him the racist statements of the board members.

37.     Plaintiff's complaints were communicated to the Board members.

38.     Plaintiff also objected to the discriminatory animus manifested toward him by the newly hired white manager.

39.     Because of Plaintiff's complaints of race discrimination, his employment was terminated for pretextual reasons.

40. As a result of the retaliatory termination of his employment, Plaintiff experienced emotional distress and suffered lost wages and benefits.

41. Plaintiff seeks and is entitled to recover back pay and monetary compensation for injuries caused by the retaliatory termination of his employment.

42. Plaintiff is also entitled to recover punitive damages and reimbursement of his costs and attorneys' fees.

## COUNT III

### TITLE VII POST-TERMINATION RETALIATION

43. Plaintiff engaged in protected activity when he filed a charge of race discrimination and retaliation against Defendant with the EEOC.

44. Defendant retaliated against Plaintiff because of Plaintiff's protected activity by pursuing a criminal complaint against Plaintiff without probable cause, causing the Plaintiff's public arrest.

45. Defendant was motivated to file the criminal charge, despite lack of proof or good faith belief of Plaintiff's guilt, for the purpose of supporting a defense to the Plaintiff's EEOC charge.

46. Defendant's act of post-termination retaliation caused Plaintiff public humiliation and injury to his professional reputation.

47. Defendant acted with malice and / or reckless disregard of Plaintiff's federally protected rights.

48. As a result of the post-termination retaliation, Plaintiff missed work at his new place of employment and had to provide an explanation to his new employer. This loss of work caused Plaintiff loss of pay extreme embarrassment and emotional distress.

49. Plaintiff seeks and is entitled to recover monetary compensation for injuries caused by the retaliatory criminal charges.

50. Plaintiff is also entitled to recover punitive damages and reimbursement of his costs and attorney's fees.

## COUNT IV

### RACE DISCRIMINATION UNDER 42 U.S.C. §1981

51. The facts alleged in Count I are incorporated herein by reference.

52. The facts alleged in Count I also state a claim in favor of Plaintiff and against Defendant for discrimination based on race in contracts in violation of 42 U.S.C. §1981.

## COUNT V.

### RETALIATION UNDER 42 U.S.C. §1981

53. The facts alleged in Count II are incorporated herein by reference.

54. The facts alleged in Count II also state a claim in favor of Plaintiff and against Defendant for retaliation in violation of 42 U.S.C. §1981.

## COUNT VI

### POST-TERMINATION RETALIATION IN VIOLATION OF 42 U.S.C. §1981

55. The facts alleged in Count III are incorporated herein by reference.

56. The facts alleged in Count III also state a claim in favor of Plaintiff and against Defendant for retaliation in violation of 42 U.S.C. §1981.

## COUNT VII

### MALICIOUS PROSECUTION – LA. CIVIL CODE ART 2315

57. Following the termination of Plaintiff's employment, Defendant caused to be filed, or caused to be pursued by law enforcement, a false criminal charge of theft.

58. Plaintiff shows that Defendant did not have a good faith belief that Plaintiff had committed theft when Defendant filed the charge. Defendant maliciously continued to pursue the charge and escalated investigation and enforcement proceedings without probable cause for many months.

59. The charge was resolved in Plaintiff's favor, and no criminal proceedings were initiated.

60. The Defendant's malicious prosecution of criminal charges caused Plaintiff serious emotional distress and injury to Plaintiff's professional reputation.

61. Defendant is liable to Plaintiff pursuant to Louisiana law for all damages and injuries Plaintiff suffered because of the Defendant's malicious prosecution of criminal charges against Plaintiff.

## V. JURY TRIAL DEMANDED

62. Plaintiff demands a trial by jury as to all matters permitted by law.

## VI. RELIEF

WHEREFORE, PLAINTIFF PRAYS:

(A) that the Court declare the employment practices of which complaint is made to be in violation of Title VII, 42 U.S.C. §1981, and otherwise inculpatory and illegal under federal law and state law La. Civ. Code article 2315;

(B) that the Court order Defendant to cease the discriminatory and retaliatory acts enumerated herein and enjoin Defendant from engaging in further discrimination and retaliation against Plaintiff because his race and protected activity;

(C) that the Court order Defendant to pay Plaintiff back pay from the date of termination until Plaintiff found comparable employment and front pay from the date of

subsequent employment until Plaintiff's pay is the equivalent of what it would have been had he not been unlawfully terminated from Defendant's employ;

    (D)    that the Court order Defendant to pay compensatory and punitive damages as determined by the jury;

    (E)    that Plaintiff be awarded pre-judgment interest on monetary damages and also the costs of this action, including attorneys' fees,

    (F)    for trial by jury for those matters triable to a jury; and

    (G)    that Plaintiff be awarded such other and further relief as the Court finds equitable, just, and proper.

                              Respectfully submitted,

                              DOWNER, JONES, MARINO & WILHITE, L.L.C.
                              401 Market Street, Suite 1250
                              Shreveport, LA 71101
                              Tel: 318-213-4444
                              Fax: 318-213-4445

                              Allison A. Jones, Bar No. 16990

                              By:   */s/ Allison A. Jones*
                              ATTORNEYS FOR PLAINTIFF

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| MACK JOHNSON | CIVIL ACTION NO. |
| V. | JUDGE: |
| COTTON STORAGE, INC. | MAGISTRATE JUDGE |
| | JURY DEMAND |

## VERIFICATION

BEFORE ME, the undersigned Notary Public, personally came and appeared MACK JOHNSON, who did depose and state that he is the Plaintiff in the foregoing Complaint, that he has read the Complaint, and that all of the allegations contained therein are true and correct to the best of his knowledge, information and belief.

_____
MACK JOHNSON

SWORN TO AND SUBSCRIBED before me, Notary Public, this 3rd day of April, 2023, in Rapides Parish, Louisiana.

_____
NOTARY PUBLIC 62031